**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **KIRKLYN JAMISON, JR.** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **21 CV** |
| | ) | |
| **J. ALEXANDERS, HOLDINGS, INC., A** | ) | |
| **Tennessee Corporation, and DERRICK** | ) | **HON.** |
| **GORDON, in his Official Capacity as** | ) | |
| **Regional Director for J. ALEXANDER'S** | ) | |
| **Defendants.** | ) | |

**COMPLAINT AT LAW**

NOW COMES Plaintiff **KIRKLYN JAMISON, JR.** (hereinafter **"JAMISON"** OR "Plaintiff") by and through his attorney Calvita J. Frederick, and complaining of the Defendants, **J. ALEXANDER'S HOLDINGS, LLC** (hereinafter "J. ALEXANDER'S" or "Defendants')**, and DERRICK GORDON (hereinafter "GORDON" or "Defendants")** states as follows:

**THE PARITES**

1.     PLAINTIFF JAMISON is an African American male, citizen of the United States, who sexual orientation is Gay. At all times relevant hereto JAMISON was a resident of the City of Chicago, County of Cook and the State of Illinois.

2**.**     DEFENDANT J ALEXANDER'S HOLDINGS. LLC. is a collection of boutique restaurants, including J. Alexander's, Redlands Grill, Stoney River, Overland Park Grill & Lyndhurst Grill that is a Tennessee corporation that does not appear to be licensed to do business within the State of Illinois.  J. Alexander's operates a restaurant in the City of Oakbrook, State of Illinois.

1

3.      DEFENDANT DERRICK GORDON is a White male, citizen of the United States and at all times relevant thereto was employed by J. Alexander's as a Regional Director, for the restaurant locations where JAMISON worked. At certain times GORDON was an Illinois resident but upon information and belief has since relocated to Cincinnati Ohio area.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1332(a)(1), this Court properly has jurisdiction over this matter. This Court has subject matter jurisdiction over these claims because they arise under the laws of the United States pursuant to 28 U.S.C. § 1331.

5.      Venue is proper in the Northern District of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1391(b) and (c) because all of the events or omissions giving rise to these claims occurred in the venue.

6.      Pursuant to 28 U.S.C. § 1367(a) this Court has pendant or supplemental jurisdiction over all other claims including the state law claims that are so related to claims in the action within the federal court's original jurisdiction that they form part of the same case or controversy.

## FACTS RELEVANT TO ALL COUNTS

7.      JAMISON was hired by DEFENDANT J. ALEXANDER'S, in 2016 as a Senior Server. In 2017 JAMISON was promoted to the position of Restaurant Manager, which position he occupied until his termination in 2021.

8.      JAMISON was originally hired for the Oakbrook J ALEXANDER'S location in June of 2016, and in May of 2017, he applied for a restaurant manager's position at J. Alexander's in Louisville, Kentucky.   JAMISON was promoted to the Restaurant Manager's position in

Louisville, which was a troubled location. JAMISON stayed in Louisville for ten months during which time he took over the bar and trained the serving staff, making that restaurant profitable.

9. JAMISON learned that there was a Bar Manager's position open in Illinois for which he applied. His efforts to speak with the J. ALEXANDER'S Regional Director, Gordon (White) were ignored. In fact, Gordon asked Jamison's Kentucky General Manger, Ryan Paulson, why JAMISON was trying to contact him.

10. JAMISON received a lateral transfer back to Illinois where he was returned to the Oakbrook J. Alexander's as the Bar Manager.

11. JAMISON inquired about an Assistant General Manager's position in July of 2018, while he was in Kentucky, in conversations with Paulson, and attempted conversations with GORDON, which positions were open both Illinois and Kentucky.

12. JAMISON was qualified for the Assistant General Manager's position for which he applied, but he was not chosen for the Assistant General Managers position.

13. The person promoted to the position of Assistant General Manager for the Kentucky opening was Matthew _____(White). Matthew came from Chicago, had been with ALEXANDER'S only a year, whereas JAMISON had been a manager for 2.5 years.

14. Mathew _____ and Emily Gaver (discussed below) were in the same training programs to become managers as was Jamison, however both Emily and Mathew were allowed to train for Assistant General Manager positions, whereas JAMISON was denied this training opportunity.

15. In another instance JAMISON, who was a mid-tier manager had trained Jason Kravinsky, (White) who was an entry level manger, with no experience and no skill sets. Nevertheless,

3

ALEXANDER'S paid Kravinsky was paid the same or nearly the same as JAMISON, although Kravinsky was at a different level and had lesser skills

16.     JAMISON performed his job in a diligent and skillful manner.

17.     JAMISON'S skills were such that he could turn a poorly performing restaurant around and make it profitable.

18.     JAMISON was qualified for the promotion to General Manager in 2018 but was denied the promotion, based upon his race and sexual preference.

19.     In June of 2020, Alise Hoffman, (White) Assistant General Manager, quit and left the defendant company due to COVID.

20.     JAMISON applied for the Assistant General Manager position Hoffman left vacant.

21.     JAMISON was qualified for the position left vacant by Hoffman's illness, but was denied the promotion, based upon his race and sexual preference.

22.     ALEXANDER'S left the Assistant General Manager's position vacated by Hoffman, open until November 2020 at which time they promoted Ryan Bark, (White) an individual who upon information and belief, was demoted from the Assistant General Managers position back to the position of bar manager, 3 years before, due to drug and alcohol abuse, which resulted in Bark's failure to report for a work shift.

23.     Bark was consistently paid more than JAMISON.

24.     Even when Bark was demoted and had no management responsibilities, Bark was paid more that JAMISON, who was performing some of the responsibilities of the Assistant General Manager and had never been demoted.

25.     In March of 2021, J. ALEXANDER'S planned to send JAMISON to Easton, another troubled restaurant, where JAMISON was again expected to turn the troubled restaurant around and make it profitable.

26.     JAMISON was unable to go to Easton because operations were shut down or reduced to carry out only due to the COVID 19 pandemic.

27.     JAMISON worked throughout the COVID closures doing meal preparation, cleaning, and cooking for carry out meal orders.

28.     JAMISON was a major part of keeping the Oakbrook store open and the business alive, during the COVID 19 pandemic.

29.     JAMISON was sent to the ALEXANDER'S restaurant in Northbrook for two weeks when the Assistant General manager, Emily Gaver at Northbrook was demoted and sent to the Oakbrook ALEXANDER'S.

30.     JAMISON should and could have been promoted to the position vacated by Gaver's demotion, and he discussed same with Maida, including his desire to be chosen for that Assistant General Manager's position, but, although ALEXANDER'S required JAMISON to do some of the Assistant General Manager's job Defendants refused to promote JAMISON to the position of Assistant General Manager at the Northbrook ALEXANDER'S.

31.     Upon information and belief, Gaver was demoted for fraternizing with employees after hours and drinking on the job, activities that warranted termination, and sent to the Oakbrook ALEXANDER'S.  Notwithstanding her demotion, Gaver still was allowed to keep her job and her Assistant General Manager's salary which caused the overhead at Oakbrook to be overbudget.

32.     In addition, Gaver had less seniority than JAMISON, and had been trained in the same class as JAMISON and Matthew, for manager training. Gaver was allowed to train, along with Matthew for Assistant General Manager and was promoted (prior to her demotion) to Assistant General Manager with only I years' experience as a manager, as opposed to JAMISON who had been a manager for 2.5 years.

33.     ALEXANDER'S refused to pay JAMISON the Assistant general manager's salary for the assistant general manager's work he was required to do at the Northbrook ALEXANDER'S.

34.     During this same time, upon information and belief, two other managers were demoted at the Oakbrook ALEXANDER'S, for activity that warranted termination, but were allowed to keep their jobs and manager's salary.

35.     ALEXANDER'S refused to promote JAMISON to any of the assistant general manager's positions in Kentucky, or at Oakbrook or Northbrook vacated by managers who were demoted for misconduct, or whose positions were for other reasons vacated.  ALEXANDER'S also in violation of their own corporate custom and policies, which required current managers to train their subordinates so that they would be ready when a position opened, refused to train JAMISON for the assistant general manager's position.

36.     JAMISON was qualified for each of the assistant general manager's positions for which he applied or that were open, and which were vacated by the previous manager's misconduct, and for which he was required to temporarily fill the positions and do some of the manger's work, but for ALEXANDER'S intentional denial of training.

37.     At all times relevant hereto, ALEXANDER'S had only two Black Assistant General Managers and no Black General Manages within its operations.

6

38.     Black employees at ALEXANDER'S including JAMISON were qualified and applied for the positions of Assistant General Manager and required to do some of the Assistant General Manager's work but were repeatedly denied the promotion to the position of Assistant General Manager and were never trained for the position at ALEXANDER'S.

39.     Only one Black man, Jason Coleman is an Assistant General Manager at ALEXANDER'S, but even Coleman is not allowed to occupy a position in upper-level management.

40.     ALEXANDER'S decision to violate its own corporate policies and refuse to train and promote JAMISON to Assistant General Manager is based upon JAMISON'S race and sexual preference.

41.     JAMISON repeatedly reported his belief that he was being denied training and promotions, equal pay, and given more work, to ALEXANDER'S management, including to Katy Maida, JAMISON'S General Manager, and Ryan Paulson, JAMISON'S Kentucky General Manager, to no avail.

42.     In fact, after JAMISON made complaints about unfair treatment he continued to be denied training and promotions, and was eventually terminated.

43.     On or about February 28, 2021, a customer left her purse and keys at the Oakbrook ALEXANDER'S.  The purse and keys were located, and JAMISON returned the purse and keys to the customer.

44.     The next day the Regional Director GORDAN terminated JAMISON.  The reason given for the termination was "poor decision making".

45.     ALEXANDER'S does not terminate White employees or employees who are not Gay for "poor decision making".

7

46.     When White employees, including Gaver and Bark, are found to have engaged in misconduct, even misconduct that warrants termination, rather than terminate the White employees, ALEXANDER'S allows the white employees to keep their job and current salary and demotes them.

47.     The reason given for JAMISON'S termination is a pretext.

48.     The real reason for JAMISON'S termination was discrimination based upon race and sexual preference.

49.     ALEXANDER'S treats its employees who are Black and Gay differently from those who are not Black and Gay, all based upon race and sexual preference.

50.     ALEXANDER'S refusal to promote JAMISON, refusal to train him, and to pay him at a lower rate than his colleagues who had been demoted, and or who had less seniority, along with the unfair distribution of work assignments and the transferring JAMISON to troubled locations, all while refusing to promote him to an Assistant General Manager's position or pay him an Assistant General Manager's salary, left JAMISON feeling harassed, ostracized, and created for JAMISON a hostile work environment.

51.     JAMISON reported the harassment, based upon race and sexual preference, to management to no avail.

52.     After JAMISON made his complaints to Maida and Paulson, and attempted to discuss his career plan with GORDON, Defendant ALEXANDER'S retaliated against JAMISON by continuing to refuse him assistant manager training, giving him additional work to do during COVID and sending him to troubled restaurants in other states.

53.     These actions diminished JAMISON'S compensation and was a material adverse change in the terms and conditions of JAMISON'S employment.

54.     In addition, JAMISON was treated differently than similarly situated employees who had not complained. Indeed, employees who were demoted for misconduct were able to keep their manager salaries, while not being required to do the work commensurate with their salary.

55.     Instead, JAMISON was required to perform some of the Assistant General Manager functions, but not paid the Assistant General Manager salary, when he had not been demoted or charged with any misconduct.

56.     No other employees received the disciplinary termination for the same or similar activity for which JAMISON was terminated.  In fact, White employees who committed offenses that warranted termination were demoted with no change in pay, notwithstanding a change in required activities.

57.     JAMISON'S termination was unwarranted, unfair and based upon JAMISON'S sexual preference and race.

58.     JAMISON's race and his sexual preference are factors in/reasons for Defendant ALEXANDER'S decision not to train and promote JAMISON to the position of Assistant General Manager.

59.     JAMISON'S race and his sexual preference are factors in/reasons for Defendant ALEXANDER'S disparate treatment, humiliation, and retaliation against JAMISON.

60.     JAMISON was treated differently than those employees outside of his race and who were not Gay in respect to the terms and conditions of his employment, all based upon his sexual preference and his race.

61.     JAMISON reported the discriminatory actions to his Illinois General Manager, Katy Maida, his Kentucky General Manager, Ryan Paulson, and attempted several times to report to

Regional Director, Gordon, who refused to communicate with JAMISON in any manner, all to no avail.

62.     Defendant J ALEXANDER'S failed to take any action regarding JAMISON'S complaints.

63.     JAMISON filed a Charge of Discrimination and on May 5, 2021, the EEOC issued a Right to Sue letter to JAMISON.

## COUNT I
## VIOLATION OF TITLE VII DISCRIMINATION BASED UPON RACE
## AGAINST CITY OF COLLEGES

64.     Plaintiff incorporates by reference all of the allegations set forth in paragraphs 1 through 63 above.

65.     Title VII of the Civil Rights Act of 1964 prohibits discrimination in employment practices and specifically 42 U.S.C.A. § 2000e-2 provides in pertinent part:

> **"(a) Employer practices**
> It shall be an unlawful employment practice for an employer—
> **(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;"

66.     Plaintiff has filed this cause subsequent to a timely filing of a Charge of Discrimination based upon race and age with the Equal Employment Opportunity Commission, and receipt of a Right to Sue Letter ("Letter") a true and correct copy of which is attached to this Complaint as Exhibits "A" and "B".

67.     Plaintiff, at all times pertinent to this Complaint, was a resident within the venue and jurisdiction of this judicial district and was within the protected race group (Black) and sexual preference (Gay)as provided by Title VII.

68.    ALEXANDER'S at all times relevant to this Complaint, operated and did business within the venue and jurisdiction of this judicial circuit, notwithstanding ALEXANDER'S appearing not to be licensed and registered to do business as a corporation within the State of Illinois.

69.    During the course of his employment JAMISON came under the supervision of ALEXANDER'S management, including GORDAN, Paulson, and Maida who subjected JAMISON to differential terms and conditions of employment because of his race and sexual preference.

70.    Defendant ALEXANDER'S conduct as previously alleged at length herein and as described in the Charge of Discrimination attached to this Complaint constitutes discrimination based upon race and sexual preference in direct violation of Title VII.

71.    As a result of Defendant's discriminatory conduct, Plaintiff has been damaged in his career and to his person and has otherwise suffered monetary damages.

WHEREFORE, Plaintiff KIRKLYN JAMISON, demands judgment against the Defendant, J ALEXANDER'S as follows:

    A.    For retroactive placement into the position of Assistant General Manager, with all back pay, benefits and other emoluments of employment;

    B.    For an award of $300,000 in compensatory damages suffered because of the discrimination; Plaintiff's injury to his career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

    C.    For attorney's fees and costs of this suit, pursuant to applicable statute; and

    D.    For such other and further relief, as is just and equitable.

## COUNT II
## RETALIATION AGAINST J ALEXANDER'S

72.    Plaintiff realleges and incorporates by reference paragraphs 1 through 63 inclusive.

73.     Plaintiff has been subjected to an intimidating and derogatory environment, forced to relocate to a state not of his choosing in order to get promoted, demeaned and humiliated in front of his peers, subjected to unfair and excessive work assignments, denied training and promotions, all in retaliation for opposing and making charges of harassment and failure to promote, all based upon race and sexual preference against Defendant J ALEXANDER'S, which conduct Plaintiff reasonably believed to be an unlawful employment practice under Title VII in violation of 42 U.S.C. § 2000e-3(a).

74.     As alleged above, these actions began occurring shortly after JAMISON began complaining about failure to train and promote and disparities in salary and attempted to discuss his career path with the General Manger Maida and General Manger Paulson and Regional Director GORDON and continued to the date of his termination.

75.      A reasonable person in Plaintiff's position would find the Defendants' actions materially adverse.

76.     Defendants acted willfully and in bad faith.

WHEREFORE, Plaintiff demands judgment against Defendant J ALEXANDER'S for compensatory, prejudgment interest, attorneys' fees, costs, and such other and further relief as the court deems proper.

## COUNT III—VIOLATION OF 42 U.S.C. § 1981
### Against All Defendants

77.     Plaintiff incorporates by reference all of the allegations set forth in ¶¶ 1 through 63.

78.     The claims against the Defendants herein are based upon discrimination based upon race and sexual orientation.

79.     Jurisdiction arises pursuant to 28 U.S.C. § 1343.

80.     Venue is appropriate as JAMISON'S residence, Defendants' residence and Defendants' business, as well as all events giving rise to this claim occurred within the counties served by this Court.

81.     Title 42 U.S.C. § 1981 provides in pertinent part:

"(a) Statement of equal rights

    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

    (b) "Make and enforce contracts" defined
    For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

    (c) Protection against impairment
    The rights protected by this section are protected against impairment by nongovernmental discrimination …"

82.     At all times herein mentioned, JAMISON was a person protected by the provisions of 42 U.S.C. § 1981.

83.     Defendants deprived JAMISON of his rights to make and enforce contracts granted to him by statutes of the United States when they deliberately and intentionally discriminated against him based upon his race and sexual orientation by setting in place a campaign designed to, and did, result in JAMISON'S harm.

84.     Defendants ALEXANDER'S and GORDAN maintain a widespread practice of treating Black and Gay employees, (based upon their race and sexual orientation) especially JAMISON less favorably than his co-workers who are not Black and Gay.

85.     Although the practice is not authorized by written law or express company policy, the practice of discrimination in the nature of disparate treatment, denial of training, denial of

promotion, and the creation of a hostile work environment is so permanent and well-settled as to constitute a custom and/or usage with the force of law.

86.     Defendants ALEXANDER'S and GORDAN'S practices represent a widespread practice of discrimination based upon race and sexual orientation, especially towards Blacks, and Gays.

87.     JAMISON was treated less favorably than his colleagues because he is Black and Gay, caused by an existing, unwritten, unconstitutional policy, which is directly attributable to a final policymaker.

88.     The final policy makers for Defendant ALEXANDER'S include Derrick GORDAN, Ryan Paulson, and Kaity Maida and other members of management, including those in HR.

89.     JAMISON alleges a pattern of conduct that gives rise to a plausible claim that an unconstitutional custom, pattern, or practice exists.  Specifically, Blacks, and Gays who occupy the position of Restaurant Manager and Bar Manager are treated differently and denied the same opportunities as their Caucasian, counterparts who are not Gay, because of discriminatory animus and intent.

90.     This supports JAMISON'S claim of having suffered adverse employment actions by conduct tantamount to harassment, and denial of training and promotional opportunities and termination.

91.     JAMISON has been employed by ALEXANDER'S since 2016 when he entered into an agreement for employment.

92.     Plaintiff at all times material to this Complaint proved his industriousness, presented and represented himself in an orderly and respectful manner and commanded and continues to command the respect of his fellow employers.

93.     Additionally, JAMISON demonstrated his capacity and abilities to perform all job tasks to which he was assigned.

94.     Rather than support JAMISON in his position of Restaurant/Bar Manager, Defendants intentionally discriminated against JAMISON in the following ways: by refusing to train and promote him to the position of Assistant General Manager in 2020, by refusing to even discuss with him his career development, by leaving a position for Assistant General Manager open for several years rather than promote JAMISON to the position; by promoting White employees who had less time on the job and had been demoted for misconduct that warranted termination, rather than promote JAMISON to the open Assistant General Manager position; and for retaliating against JAMISON for complaining about discrimination against him while working during COVID, being transferred to troubled restaurants, and by creating a "for cause" reason to terminate JAMISON for a minor infraction.

95.     Defendants' intentional discriminatory animus through the actions of its employees GORDAN, PAULSON, and MAIDA, and other employees in management and HR are all based upon race and sexual orientation.

96.     ALEXANDER'S knew about or reasonably should have known about the hostile work environment created by GORDON, Paulson, and Maida and other management employees in HR and failed to take appropriate remedial action to protect JAMISON.

97.     GORDAN, Paulson, and Maida and other members of management, including those in HR, intentional discrimination interfered with JAMISON'S right to enforce his agreement with ALEXANDER'S including the performance, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

98.     As a result of the Defendants' discrimination based upon race and sexual orientation, JAMISON has suffered injury to his career, as well as emotional pain and suffering, inconvenience, mental anguish, and loss of enjoyment of life, and other losses for which he is entitled to compensatory damages in accordance with 42 U.S.C. § 1981.

WHEREFORE, Plaintiff JAMISON demands judgment against the Defendant ALEXANDER'S, as follows:

> A.    Actual damages in the amount of lost wages and back pay from March of 2021 to present, including any differential in pay as a result of the failure to promote;
>
> B.    Compensation for loss of employee benefits, including medical, dental, life, 401K, pension, stock options and retirement benefits;
>
> C.    Additional compensatory damages for Plaintiff's mental anguish, pain, and suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary damages and fringe benefits;
>
> D.    Additional compensation for damages to and the loss of JAMISON'S career;
>
> E.    For punitive damages;
>
> F.    All reasonable and necessary attorney's fees incurred as specified;
>
> G.    All costs of court; and
>
> I;    Such other and further relief as this court deems just and proper.

## COUNT IV
## VIOLATION OF EQUAL PAY ACT

99.     Plaintiff re-alleges and incorporates by this reference each of the allegations in paragraphs 1-63 as if fully restate herein.

100..   Plaintiff is former male employee of ALEXANDER'S.

101.    At all times relevant to this action, the relationship between Plaintiff and ALEXANDER'S, was a relationship of "employee" to "employer" within the meaning of 29 U.S.C. § 206(d), such that a direct cause of action against ALEXANDER'S, exists for violation of the Equal Pay Act by refusing to pay equal pay for equal work.

102.    Plaintiff brings this action under the provisions of the Equal Pay Act of 1963, 29 U.S.C.A. § 206(d), hereinafter called the "Act."

103.    This Court has subject matter jurisdiction under 29 U.S.C.A. § 206(b).  JAMISON is a resident citizen of the State of Illinois, and Defendant ALEXANDER'S is doing business in the Cities of Oakbrook and Northbrook and State of Illinois, notwithstanding it appears that ALEXANDER'S is not a corporation licensed to do business within the State of Illinois.

104.    Defendant ALEXANDER'S is an employer within the meaning of 29 U.S.C.A. § 203. JAMISON'S former employment with ALEXANDER'S is subject to the provisions of the "Act".

105.    At all times relevant to this action, ALEXANDER'S acted by and through its agents and employees, including, but not limited to, GORDON, Paulson, and Maida and other members of management, including those in HR, who acted in the course and scope of their employment with ALEXANDER'S.

106.    Plaintiff performed a Restaurant/Bar Manager's job requiring equal skill, effort, and responsibility as the Assistant General Manager's position.

107.    Plaintiff was paid less, and his pay was purposefully reduced, by race and sexual orientation-based discriminatory conduct.

108.    This practice is in violation of the Equal Pay provisions of the Fair Labor Standards Act, 29 U.S.C.A. § 206(d).

109.    Defendants have willfully, and wantonly disregarded Plaintiff's statutory rights and Defendants' discrimination was undertaken in bad faith.

110.    As a direct and proximate result of the above-described unlawful employment practices, Plaintiff has suffered and continues to suffer the indignity of discrimination, the invasion of right to be free from discrimination, based upon race and sexual orientation, humiliation, lost income, emotional pain, mental distress, inconveniences and mental anguish, for which she is entitled to recover.

WHEREFORE, Plaintiff demands judgment against the Defendants as follows:

a.  For an award of $200,000.00 in compensatory damages suffered because of the discrimination;

b.  For Plaintiff's injury to her career, emotional pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary damages and fringe benefits;

c.  For attorney's fees and costs of this suit, pursuant to applicable statute; and

d.  For such other and further relief, as is just and equitable.

### COUNT V
### WILFUL VIOLATION OF EQUAL PAY ACT
### (Against All Defendants)

111.    Plaintiff restates and realleges each and every allegation contained in Paragraphs 1-63 and Paragraphs 98-110 as Paragraph 111 herein.

112.    Defendants' violation of the Equal Pay Act provisions of the Fair Labor Standards Act, as set forth above, was a malicious and willful violation in that Defendants knew, or should have

known, of the provisions pertaining to equal pay contained in the Fair Labor Standards Act but continued to pay male employee performing the same work as Plaintiff under similar working conditions at a higher rate than JAMISON.

113.    JAMISON believes that said discrimination continues to the present time.

WHEREFORE Plaintiff pray that this Court enter judgment for Plaintiff in the amount found to be the unpaid differential due under 29 U.S.C.A. § 206, an amount equal to wages and benefits lost, and an additional equal amount as liquidated damages for Defendants' malicious and willful violation of the said statute, plus reasonable attorney's fees and cost of this action.

Respectfully submitted,

KIRKLYN JAMISON

By      s/ Calvita J. Frederick
        Attorney for Plaintiff

Calvita J. Frederick
Post Office Box 802976
Chicago, Illinois 60680-2976
312-421-5544
ARDC # 6184001
Calvita.frederick@att.net